Susan **FANCSALI**, a Minor, by Paul of **FANCSALI** and Kimberlee **Fancsali**, Her Parents and Natural Guardians, and Paul Fancsali and Kimberlee **Fancsali**, Husband and Wife, Appellants (at 2001),

v.

**UNIVERSITY HEALTH CENTER OF PITTSBURGH**, a Pennsylvania corporation; and Magee–Women'S Hospital, a Pennsylvania corporation, and Robert Guthrie, M.D., Michael Balsan, M.D., Dena Hofkosh, M.D., Brian Clista, M.D.,

C. Bilinski, M.D., L. Cook, M.D. K. Su-karochana, M.D., Ashook K. Gain, M.D., J. Pipepi, M.D., J.D. Abino, M.D., Mark S. Scher, M.D., Individuals; and Magee–Women's Hospital, Department of Radiology, Jules H. Sumkin, D.O., Medical Director, Thomas Bender, M.D., Jocyline L. Medina, M.D., Christopher M. Johns, M.D., Frederick S. Sherman, M.D.; and Magee–Women's Hospital, Department of Ultrasound/Obstetrics and Gynecology, Lyndon M. Hill, Medical Director, Jerry G. Martin, M.D., Sheila M. Ward, M.D.; and, Magee–Women's Hospital, Department of Reproductive Genetics, John A. Barranger, M.D.; and Southwestern Pediatric Association, A Pennsylvania Professional Corporation, Harvey M. Rubin, M.D., K.G. Pai, M.D., E. Markus, M.D., And Anthony F. Gentile, M.D., Michael F. Putinetti, M.D., K.G. Pai, M.D., E. Markus, M.D., and Anthony F. Gentile, M.D., Michael F. Lupinetti, M.D., and Gary J. Connor, M.D., t/d/b/a Gentile Lupinetti Associates.

In re Susan FANCSALI, a Minor.

Appeal of Susan FANCSALI, a Minor, By and Through her parents and guardians, Paul FANCSALI and Kimberlee Fancsali (at 2005).

Superior Court of Pennsylvania.

Argued March 18, 1997.

Filed Aug. 19, 1997.

Falco A. Muscante, Pittsburgh, for appellants.

Robert J. Marino, Pittsburgh, for University Health Center of Pittsburgh, Magee–Women's Hosp. and Robert Guthrie, M.D., etc.

Robert J. Grimm, Washington, for Ashook K. Jain, M.D.

Andrew F. Adomitis, Pittsburgh, for Anthony F. Gentile, M.D., etc.

Before TAMILIA, JOHNSON and BROSKY, JJ.

JOHNSON, Judge.

We are asked to determine whether a medical malpractice action by parents on behalf of their child may be discontinued without prejudice as to the child's claim upon an allegation by the parents of their alleged financial inability to pursue the action. The trial court found that the parents were not required to file suit but chose to do so and that, having made that choice, could not impose unreasonable burdens on the defendants. We conclude that the findings of the trial court are supported by the record, and that the trial court did not abuse its discretion in denying the request to discontinue the minor's action without prejudice. Accordingly, we affirm.

Susan Fancsali was born on July 16, 1992. Shortly after birth, she contracted a Group B streptococcus infection which caused her to suffer from hypoxia, encephalopathy and other complications. Paul and Kimberlee Fancsali, the father and mother of Susan, commenced a medical malpractice action on behalf of their minor daughter by writ of summons on July 6, 1994. The Defendants filed a rule to file a complaint on August 24, 1994. Almost four months later, on December 16, 1994, the Fancsalis presented a motion for extension of time to engage in discovery. The motion alleged that on August 26, 1994, the Fancsalis had been informed by legal counsel for Magee–Women's Hospital (Magee), one of the defendants, that a 1992 sonogram film connected to the treatment of Susan was not available for review. The motion further alleged that the Fancsalis had submitted copies of the medical records received from Magee to their experts for review. The motion went on to allege that, on December 8, 1994, the plaintiffs' experts advised the Fancsalis that additional records would have to be obtained in order for the experts to render an opinion.

On the basis of these averments, the Fancsalis alleged that they required additional time to engage in discovery to secure the complete medical record from Magee and

thereafter permit their experts to review the records of the complete medical file. In response to the motion, Judge R. Stanton Wettick entered an order granting the Fancsalis an additional forty-five days, until January 31, 1995, with the right to request additional time thereafter.

On February 7, 1995, the Fancsalis presented a Petition for Leave to Discontinue a Minor's Action Without Prejudice in the Orphans' Court Division of the trial court. The defendants filed objections to this petition. Nine months later, on November 6, 1995, and after oral argument on the petition and objections, Judge I. Martin Wekselman entered the following order:

## ORDER OF COURT

AND NOW, this 6th day of November, 1995, after argument and due consideration, it is ordered, adjudged and decreed that Paul Fancsali and Kimberlee Fancsali, parents and natural guardians of Susan Fancsali, a minor, be and are hereby granted leave to conduct such discovery as they deem necessary, and file a complaint on or before March 1, 1996, it being understood that no further extensions will be granted.

### BY THE COURT:
### s/Wekselman, J.

The order did not expressly refer to the request for a discontinuance without prejudice. Rather, it strictly granted leave to the Fancsalis to conduct "such discovery as they deem necessary, and file a complaint on or before March 1, 1996." By implication, the request for a discontinuance without prejudice was rejected.

At the November 1995 hearing, the Fancsalis represented to Judge Wekselman that they had experienced difficulties in obtaining the necessary medical records from the various medical providers. After the records were received and forwarded to their medical experts, the Fancsalis were informed that considerable additional discovery would be required including the taking of many depositions before the experts would be able to render an opinion as to the possible negligence of the defendants. The Fancsalis told

their attorneys that they could not afford the expense involved in such pretrial discovery; the attorneys indicated both to their clients and to the court that the attorneys could not afford to undertake the financing of the pretrial matters on behalf of the Fancsalis. The Fancsalis now argue that Judge Wekselman committed error when he denied their petition to discontinue their daughter's action without prejudice.

■ A discontinuance is the exclusive method of voluntary termination of an action, in whole or in part, by a plaintiff before the commencement of trial. Pa.R.C.P. 229(a). No action to which a minor is a party shall be discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor. Pa.R.C.P.2039(a). "Decisions as to the granting of such requests for discontinuance rest in the discretion of the trial judge and can be reviewed only as to the abuse of that discretion." *Failor v. Westex, Inc.*, 413 Pa.Super. 343, 347–48, 605 A.2d 390, 393 (1992); *Martinelli v. Mulloy*, 223 Pa.Super. 130, 133, 299 A.2d 19, 20 (1972). With this standard of review before us, we review Judge Wekselman's order.

■ In entering the November 1995 order, Judge Wekselman weighed the factors set forth in *Foti v. Askinas*, 432 Pa.Super. 604, 639 A.2d 807 (1994), relating to when a motion for discontinuance without prejudice would be appropriate. In *Foti*, the parents had brought a medical malpractice action on behalf of their daughter who was born with severe deformities of the right leg requiring amputation of the leg one year after birth. The plaintiffs were unable to present an expert witness to establish that the medical practitioner/defendants were negligent in administering the drug Compazine during the the first trimester of the mother's pregnancy. At the time of the discontinuance, the case had been pending for almost five years. Depositions had been taken, interrogatories exchanged and several motions ruled on by the court. In concluding that the trial court had abused its discretion in granting the discontinuance without prejudice, this Court considered the purposes behind the Minority Tolling Statute, 42 Pa.C.S. § 5533, as well as the effect that entry of a discontinuance order

would have on either side. We concluded that the trial court's order to discontinue without prejudice allowed the minor to have twelve years to locate expert testimony needed to proceed with her case, thus affording a substantial advantage to the minor plaintiff. *Id.* at 608, 639 A.2d at 809.

In rejecting the request for a discontinuance without prejudice while affording the Fancsalis an additional four months to engage in discovery, Judge Wekselman stated:

> The Court is reluctant to foreclose the minor's opportunity to make a recovery, if indeed a viable cause of action exists. On the other hand, however, the Court is reluctant to force all of these defendants, who have been sued and have had appearances entered on their behalf, to remain in limbo until the end of July of 2012. The Court, therefore, concludes that it will not impose too great a burden on defendants to allow plaintiffs some additional time to investigate the possibility of finding other counsel who may be willing to undertake the representation on terms which are economically agreeable to all concerned, complete such discovery as necessary, and file a complaint. The Court will, therefore, enter an Order granting the plaintiffs, as guardian of the minor, an additional period of time, until March 1, 1996, to complete such discovery as may be required, and to file a complaint, it being understood that no further extensions will be granted.

Opinion, Wekselman, J., November 6, 1995 at 3.

At the time Judge Wekselman entered the November 1995 order, sixteen months had passed since the Fancsalis had filed their praecipe for a writ of summons. No complaint had been filed. At the hearing on the motion for the discontinuance, the Fancsalis' counsel informed the court that his clients had stated that they could not afford to proceed further with discovery and counsel further informed the court that counsel was not prepared to underwrite the future pre-trial discovery expenses. There is nothing of record to suggest that further delay, or the entry of a discontinuance without prejudice, would result in the recovery of any additional medical documents or a change in the opinion of the medical experts. On these facts, this Court cannot reasonably conclude that the entry of the November 1995 order granting an additional four months for discovery while requiring the filing of a complaint at the end of that additional extension constitutes an abuse of discretion. *Failor v. Westex, Inc., supra.*

Moreover, a careful examination of the Minority Tolling Statute leaves doubt as to its applicability to any situation where, as here, and as in *Foti,* suit has already been commenced. In pertinent part, the Statute provides:

**§ 5533. Infancy, insanity or imprisonment**

. . . . .

**(b) Infancy.**—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

Act of May 30, 1984, P.L. 337, No. 67, § 1; 42 Pa.C.S. § 5533(b).

By its very terms, the statute does nothing more than extend the period of time during which an action involving an unemancipated minor may be commenced. The statute is silent as to any impact upon actions already begun. The words of the section are clear and free from any ambiguity. Its language may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). The Minority Tolling Statute was enacted to protect the rights of minors by retaining the minor's legal right to bring an action where the minor does not have a parent or guardian either able or prepared to bring a suit. *Foti v. Askinas, supra* at 608, 639 A.2d at 809. Its purpose is to give minors an equal opportunity to bring a cause of action. *Id.* It was not intended to give minors more rights than others. *Id.*

In the case before us, the Fancsalis exercised the minor child's right to bring suit when they filed their praecipe for writ of summons on July 6, 1994. It was only after they were unable to secure a favorable expert opinion based upon all of the medical documents then available that they sought to discontinue their action without prejudice. Because the suit had already been commenced, the Minority Tolling Statute has no application. The trial court afforded the Fancsalis additional time to seek to retain counsel who would be prepared to proceed on terms acceptable to both the clients and counsel. We reject the Fancsalis' suggestion that the equitable criteria for deciding a petition for discontinuance of a law suit are different when a minor's claim, properly initiated, is involved. The minor would be entitled to no more relief even if she had brought the action in her own name. We hold that where a medical malpractice claim has been commenced on behalf of a minor and the medical documentation connected with the alleged negligent treatment of the minor has been produced, discontinuance without prejudice is not required on the mere allegation that the plaintiffs could not afford the further expense of pretrial discovery.

We turn now to the second order from which the Fancsalis have brought this appeal. The Fancsalis had taken an appeal from the November 1995 order, which was quashed as interlocutory. *Fancsali v. University Health Center of Pittsburgh,* No. 2163 Pittsburgh 1996 (Pa.Super., January 30, 1996). The docket does not disclose any activity relating to further discovery subsequent to November 6, 1995. On August 30, 1996, the defendants filed a praecipe for entry of final judgment, based upon Judge Wekselman's November 1995 order and based upon the Fancsalis' failure to file a complaint. Judgment of non pros was entered on September 3, 1996. The Fancsalis then filed their Petition to Strike Judgment of Non Pros on September 20, 1996. Judge Wekselman dismissed that petition by order entered September 30, 1996. The order provided:

### ORDER OF COURT

AND NOW, this 30th day of September, 1996, the petition to strike judgment of non pros is dismissed.

**BY THE COURT:**

s/Wekselman, J.

This is the second order that the Fancsalis challenge in this appeal.

The question of granting a non pros because of the failure of the plaintiff to prosecute his action within a reasonable time rests within the discretion of the trial court and the exercise of such discretion will not be disturbed on appeal unless there is proof of a manifest abuse thereof. *Penn Piping, Inc. v. Insurance Co. of North America,* 529 Pa. 350, 354, 603 A.2d 1006, 1008 (1992), citing *Gallagher v. Jewish Hospital Ass'n,* 425 Pa. 112, 113, 228 A.2d 732, 733 (1967). By the same token, our standard of review when considering the denial of a petition to open or strike a judgment of non pros is whether the trial court abused its discretion. *Sklar v. Harleysville Insurance Co.,* 526 Pa. 617, 619, 587 A.2d 1386, 1387 (1991).

In their Petition to Strike Judgment of Non Pros, the Fancsalis alleged, inter alia:

\* \* \* \* \*

2. On behalf of themselves and the Minor Plaintiff, the parents were compelled to initiate suit by filing a Writ of Summons because the statute of limitations for the parents' cause of action was imminent and certain potential defendants refused or delayed to supply medical documentation until after suit was filed.

3. After complete medical records were received and preliminarily reviewed by medical experts, the parents determined that they were financially unable to afford the costs of litigation.

4. Rather than expose the Defendants to additional expense in requiring them to file responsive pleadings and engage in extensive discovery, the parents were willing to voluntarily discontinue their action, with prejudice, but petitioned the Orphans' Court Division to discontinue the Minor Plaintiff's action without prejudice, based upon Pennsylvania's Minority Tolling Statute....

5. The rights of the Minor Plaintiff should not be compromised because her

parents are financially unable to pursue her cause of action.

Petition to Strike Judgment of Non Pros, filed September 27, 1996 at 1–2.

■ From the averments contained in the Petition to Strike, it appears that the Fancsalis believed themselves to have the complete medical records relating to their malpractice lawsuit and their sole reason for seeking a discontinuance without prejudice of their minor child's action was the fact that the Fancsalis "were financially unable to afford the costs of litigation." The Petition is silent as to any attempts by the Fancsalis to find other counsel who might have been willing to undertake representation on terms economically agreeable to the Fancsalis, as suggested by Judge Wekselman in his November 1995 Opinion, *supra.* Nor does the Petition aver that such an investigation would have been fruitless. Sixteen months had passed between the filing of the writ of summons on July 6, 1994, and the entry of the second order granting additional time for discovery on November 6, 1995. An additional ten months elapsed before the judgment of non pros was entered on September 3, 1996. The Fancsalis averred that complete medical records had been received. Experts had been consulted but were unable to provide an opinion charging negligence based upon the medical materials provided to them. On these facts, we conclude that Judge Wekselman did not abuse his discretion in denying the petition to strike the judgment of non pros.

■ A judgment of non pros may not be opened without the aggrieved party presenting evidence of three things. The Fancsalis were required to: (1) establish the prompt filing of the petition to open; (2) reasonably explain the delay that caused the entry of judgment; and (3) state sufficient facts to establish a cause of action against the defendants. *Rose v. Allentown Morning Call,* 427 Pa.Super. 84, 86, 628 A.2d 441, 442–43 (1993). Here, the Fancsalis have not even attempted to establish a cause of action. In their petition to strike, they concede that they are financially unable to proceed with the suit. Taking all of their pleadings together, it is clear that they are without a medical expert to support any claim of negligence against the named defendants. The third prong of the tripartite test to permit opening of the non pros, therefore, cannot be satisfied. On this record, Judge Wekselman would have palpably committed an error of law had he granted the relief sought by the Fancsalis.

We conclude that both of the orders here under review were entered in accordance with the discretion vested in the trial court and no abuse of that discretion has occurred. Accordingly, we will affirm the order that dismissed the petition to strike judgment of non pros.

Order **AFFIRMED.**

BROSKY, J. files a dissenting opinion.

BROSKY, Judge, dissenting.

I dissent. In essence, the primary issue before us is whether the court erred in failing to grant appellants' petition to discontinue the minor's action without prejudice? In my opinion the answer is yes.

The majority correctly states that the decision to grant a motion for voluntary discontinuance rests in the discretion of the trial court and further discusses the leading authority on the matter, *Foti v. Askinas,* 432 Pa.Super. 604, 639 A.2d 807 (1994). However, as I find the present case substantially different than *Foti,* I cannot agree with the trial court's decision.

As noted by the majority, in *Foti* we considered a situation involving a minor plaintiff who was born with deformities of the leg which later resulted in the amputation of the leg. A suit was brought by the minor's parents and extensive discovery was completed. Some five years after suit was brought appellants sought a voluntary discontinuance because they had been unable to obtain an expert witness to support their malpractice claim. The trial court granted the discontinuance and we reversed finding that allowing the discontinuance would have given the minor child an unfair advantage. However, there are substantial differences between the facts of *Foti* and those presented here.

As indicated in Judge Wieand's concurrence in *Foti,* the only reason discontinuance

was sought there was that even after substantial litigation had ensued the plaintiffs realized they could not make out a case. Seeking a discontinuance was their only opportunity to prevail sometime down the line assuming medical science developed theories to support their tort claim. Further, extensive discovery and motion litigation had taken place and we concluded that much effort and expense already expended would likely be repeated if the discontinuance was allowed to stand and the minor refiled suit sometime later. Given these circumstances allowing a discontinuance was deemed fundamentally unfair to the defendant/appellants. However, the same underlying factors are not presented here.

There is no suggestion that appellants would be unable to make out a prima facie case against appellees and are seeking a discontinuance merely in the hopes of favorable future developments in either law or medical science as was the case in *Foti*. Rather, appellants realized that they could not afford, at that time, to litigate the matter in the manner that the case requires and rather than waste the time and money of all parties as well as judicial resources they sought a voluntary discontinuance. Other than ruling appellants to file a complaint, appellees have not been forced by appellants to take any action and, as such, they have not been burdened or forced to expend significant time and money to defend the current action. Lastly, appellees have not tipped off their trial strategy or their experts' findings so as to provide appellants with some sort of strategical advantage in the future. Thus, the granting of a discontinuance would not provide the minor child with a strategic advantage nor prejudice appellees and the granting of the discontinuance merely returns the parties to the status they held prior to the filing of the suit.

In contrast, denial of the discontinuance will result in the foreclosure of what may be a viable action prior to the minor child's reaching first grade. The trial court, in its opinion, recognizes the qualitative differences between the present case and *Foti* and indicates a "reluctance" to foreclose the minor's opportunity to make a recovery. Neverthe-

less, the court, in apparent preoccupation with the minority tolling provision, states it is reluctant "to force all these defendants, who have been sued and have entered on their behalf, to remain in limbo until the end of July 2012." I believe this perspective is misguided.

With respect to the bearing of the minority tolling provisions on the present inquiry, the majority states, "[b]ecause the suit had already been commenced the Minority Tolling Statute has no application." Majority opinion, p. 967. I am in complete agreement. The passage of the minority tolling provisions was a legislative decision with attendant costs and benefits to those it affects. Nevertheless, any benefit it provides to a minor was by grace of the legislature and it should not impact on the decision to grant or deny a motion for voluntary discontinuance. Thus, the present case, and others like it, should be analyzed with complete disregard to the minority tolling provisions. Instead, the request for continuance should be thought of as any other request to voluntarily discontinue the action within the prescribed limitations period. If granted and appellants are later able to overcome their present obstacles and file suit within the statutory period, so be it. The proper inquiry should be upon how much inconvenience and burden has already been placed on the opposing party and whether it is fair to allow the moving party out of the litigation at that juncture while keeping its option to sue later open.

Since in the present case the expenditure of time and money was minimal and granting the motion would not have placed the appellees in a substantially worse position than had suit never been filed, the equities, in my opinion, weigh in favor of granting the voluntary discontinuance. Thus, my dissent.